Mark N. Mutterperl (MM 1977)
Jessica S. Parise (JP 6111)
FULBRIGHT & JAWORSKI, LLP
666 Fifth Avenue
New York, New York  10103
Tel.:  (212) 318-3000
Fax:  (212) 318-3400

Of Counsel:
Christopher R. Benson
Alicia Morris Groos
Chet F. Garner
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701
Tel.:  (512) 474-5201
Fax:  (512) 536-4598

*Attorneys for Plaintiff Castro Cheese Co, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
CASTRO CHEESE CO., INC.,                   :
     Plaintiff,                                        :
                                                                        :
v.                                                                  :   CIVIL ACTION NO._____
                                                                        :   COMPLAINT
LA VAQUITA INC., and                             :   (Jury Trial Demanded)
VAQUITA CHEESE INC.,                         :
     Defendants.                                   :
------------------------------------------------------------ x

Castro Cheese Company, Inc. brings this action against La Vaquita Inc. and Vaquita Cheese Inc. for trademark infringement, unfair competition, deceptive trade practices and unjust enrichment.

## PARTIES

1. Castro Cheese Company, Inc. ("Castro Cheese") is a Texas corporation having a business address of 4006 Campbell Road, Houston, Texas 77080.

2. On information and belief, La Vaquita Inc. ("La Vaquita") is a New York corporation having a business address of 216 East 117th Street, New York, New York 10035.

3. On information and belief, Vaquita Cheese Inc. ("Vaquita Cheese" together with "La Vaquita", "Defendants") is a New York corporation having a business address of 1409 Foster Avenue, Brooklyn, New York 11230.

## NATURE OF THIS ACTION

4. This is an action for trademark infringement, unfair competition, deceptive trade practices and unjust enrichment under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act") and the common and statutory laws of the State of New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Castro Cheese's claims under New York law.

6. This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendants because they sell goods under the infringing marks in this district.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts complained of occurred in this district and Defendants distribute, sell, promote, and/or intend to sell their infringing products in this district.

## BACKGROUND

### I. Castro Cheese and its Marks

9. Castro Cheese is in the business of manufacturing fresh Mexican cheese products. Castro Cheese has been in the business making its unique specialty cheeses since about 1974.

10. The President of Castro Cheese, Mrs. Maria Castro, was raised on a farm in Mexico. There she helped her mother make a special fresh Mexican cheese.

11. After Mrs. Castro married and moved to Houston in 1972, she began experimenting with a process for making cheese of the type her mother taught her to make.

12. Over the course of about one year, Mrs. Castro experimented with different ingredients and processes until she discovered a way to make a cheese that was very similar in look, feel, and taste to the cheese which her mother had taught her to make years before.

13. The cheese's taste, salt content, consistency, and unique crumbling ability set Mrs. Castro's cheese apart from all the other cheeses in the marketplace.

14. After Mrs. Castro developed the process for making her cheese, she started making it for friends and acquaintances. She then started a successful business.

15. In about 1976, the Castros purchased a building on Campbell Road in Harris County, Texas and began selling specialty cheese under the trademark LA VAQUITA®. That trademark has since been registered in the state of Texas and with the United States Patent and Trademark Office.

16. Over the years, Castro Cheese has developed a tremendous amount of goodwill in its LA VAQUITA® cheese. Members of the consuming pubic have now come to recognize the source of this specialty cheese based on the its unique name and label.

17. The popularity of Castro Cheese's goods is not limited to the Latin American/Hispanic consuming public. Castro Cheese sells its cheese to consumers spanning the cultural spectrum and to a diverse range of retail, wholesale, and restaurant establishments.

18. Castro Cheese is the owner of multiple United States Federal Trademark Registrations for its LA VAQUITA® mark and related packaging designs for "meats and processed foods, namely cheese" in International Class 29. Castro Cheese's registrations include the following:

| U.S. Registration Number | Mark | Date of Registration |
|---|---|---|
| 1,972,098 | LA VAQUITA | May 7, 1996 |
| 2,180,079 | LA VAQUITA & Design "La Vaquita" | August 11, 1998 |

These registrations are hereinafter collectively referred to as the "LA VAQUITA Marks." True and correct copies of these United States registrations are attached to this Complaint at Exhibit A. These registrations are valid and subsisting and are incontestable pursuant to 15 U.S.C. § 1065.

19. Castro Cheese's original and best selling product under the LA VAQUITA Marks is its Queso Fresco, a fresh white cheese. Photographs of Castro Cheese's Queso Fresco product, featuring the LA VAQUITA Marks, is attached as Exhibit B.

20. Castro Cheese has enjoyed significant sales of its products under its LA VAQUITA Marks. For example, in the period from 2002 - 2006, Castro Cheese sold cheese worth over $77,000,000 in revenues. Additionally, Information Resources Inc. (IRI) scan data reports rank Castro Cheese's LA VAQUITA products as the third best selling brand of Hispanic-style cheese on a nationwide basis.

21. Castro Cheese's products bearing the LA VAQUITA Marks are sold in many supermarkets and supermarket chains in at least nine states.

22. Retail customers rely upon Castro Cheese's LA VAQUITA Marks to distinguish Castro Cheese's goods from those of other companies and have come to expect that all products designated with the LA VAQUITA Marks will come from the same source and will be of equal quality with all the other products from that source.

23. As a result of Castro Cheese's long-time and extensive use and promotion of its LA VAQUITA Marks, these marks have become distinctive to designate Castro Cheese, to distinguish Castro Cheese's goods from others in the cheese business, and to distinguish the source or origin of Castro Cheese's goods. As a result of extensive efforts by Castro Cheese, its LA VAQUITA Marks have become well-known and widely recognized amongst consumers.

24. Castro Cheese enjoys strong recognition of its LA VAQUITA Marks amongst its relevant consumer base, and has developed enormous goodwill in the LA VAQUITA Marks.

25. Castro Cheese's LA VAQUITA Marks are inherently distinctive, serving to identify and indicate the source of Castro Cheese's goods to the consuming public, and to distinguish its goods from those of others.

## II. Defendants' Activities

26. On information and belief, La Vaquita and Vaquita Cheese are both for-profit corporations that sell, among other things, cheese products, in supermarkets and grocery stores.

27. Defendant La Vaquita adopted a mark for various cheese products that features the terms "La Vaquita" prominently on its packaging above a picture of a cow. A picture of La Vaquita's mark and packaging is shown in Exhibit C.

28. Defendant Vaquita Cheese adopted a mark for various cheese products that features the term "Vaquita" prominently above a picture of smiling cow. A picture of Vaquita Cheese's mark and packaging is shown in Exhibit D.

29. Upon information and belief, Defendants, or their agents, have worked in concert to develop their cheese products and/or the infringing marks used to promote their cheese products.

30. Castro Cheese, through its attorneys, wrote Defendants separately informing them of Castro Cheese's federal registrations and requesting that they stop their infringing uses of Castro Cheese's federally registered marks. After no response was received, follow up letters were sent. Counsel for Castro Cheese and representatives of Castro Cheese also spoke with representatives of or persons at Defendants' establishments on several occasions in an attempt to resolve the matter.

31. Carlos Ramos, agent for Defendant La Vaquita, spoke with Elizabeth Gray of Castro Cheese. Mr. Ramos verbally agreed that his business would cease use of its infringing mark, and that he would confirm his agreement in writing. Mr. Ramos has since ceased communicating with Castro Cheese and its attorneys, apparently has reneged on the verbal agreement, and apparently has not ceased use of the infringing mark.

32. On information and belief, Defendants have distributed and are selling their cheese products under their infringing labels in this district and elsewhere within the United States.

33. Defendants use their infringing labels on cheese products that compete directly with those sold by Castro Cheese under its LA VAQUITA Marks.

34. Defendants have never been authorized by Castro Cheese to adopt or use any mark consisting of "La Vaquita," "Vaquita" or any other label or mark similar to Castro Cheese's LA VAQUITA Marks.

35. Defendants have adopted and used their marks wrongfully and willfully, to interfere with Castro Cheese's businesses and to Castro Cheese's economic detriment, by harming the distinctive nature of Castro Cheese's LA VAQUITA Marks.

36. Defendants' unauthorized uses of the infringing labels are likely to cause confusion, mistake, and deceit of the public as to the affiliation, connection, or association of Defendants with Castro Cheese, or as to the origin, sponsorship, or approval of Defendants' goods by Castro Cheese.

37. Defendants' unauthorized uses of their confusingly similar labels enables Defendants to trade on and receive the benefit of the goodwill built up in the LA VAQUITA Marks at great labor and expense to Castro Cheese, and allows Defendants to gain acceptance for their goods and services not solely on their own merits, but on the reputation and goodwill associated with Castro Cheese's LA VAQUITA Marks.

38. Defendants' unauthorized uses of their confusingly similar labels removes from Castro Cheese the ability to control the nature and quality of how its LA VAQUITA Marks are

used and places the valuable reputation and goodwill of Castro Cheese in the hands of Defendants, over whom Castro Cheese has no control.

39. Unless this Court restrains Defendants' acts, these acts will continue and will continue to cause irreparable injury to Castro Cheese and to the public for which there is no adequate remedy at law.

## FIRST CAUSE OF ACTION:
## FEDERAL TRADEMARK INFRINGEMENT

40. Castro Cheese repeats and realleges each and every paragraph set forth above as if fully set forth herein.

41. The acts of Defendants constitute infringement of Castro Cheese's federally registered marks LA VAQUITA (U.S. Reg. No. 1,972,098) and LA VAQUITA & Design (U.S. Reg. No. 2,180,079) in violation of 15 U.S.C. § 1114(1).

42. The acts of Defendants in violation of 15 U.S.C. § 1114(1) were and are willful.

43. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION:
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

44. Castro Cheese repeats and realleges each and every paragraph set forth above as if fully set forth herein.

45. The acts of Defendants constitute unfair competition, false designation of origin, palming off and false description or representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. The acts of Defendants in violation of 15 U.S.C. § 1125(a) were and are willful.

47. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION:
## NEW YORK TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

48. Castro Cheese repeats and realleges each and every paragraph set forth above as if fully set forth herein.

49. The acts of Defendants constitute trademark infringement and unfair competition in violation of the common law of the state of New York.

## FORTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

50. Castro Cheese repeats and realleges each and every paragraph set forth above as if fully set forth herein.

51. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of Castro Cheese.

## FIFTH CAUSE OF ACTION:
## NEW YORK DECEPTIVE TRADE PRACTICES

52. Castro Cheese repeats and realleges each and every paragraph set forth above as if fully set forth herein,

53. The acts of Defendants complained of herein constitute deceptive trade practices in violation of New York General Business Law § 349

## PRAYER FOR RELIEF

54. This Court enter judgment that:

   (a) Castro Cheese's LA VAQUITA Marks and Registrations are valid;

   (b) Defendants have infringed Castro Cheese's LA VAQUITA Marks in violation of 15 U.S.C. § 1114(1) and New York law;

(c)     Defendants have engaged in unfair competition in violation of 15 U.S.C. § 1125(a) and New York law;

(d)     Defendant's have been unjustly enriched by their activities at the expense of Castro Cheese in violation of New York Law.

(e)     Defendants conduct constitutes deceptive trade practices under New York General Business Law § 349.

(f)     Defendants infringement, unfair competition, deceptive trade practices and unjust enrichment were willful; and

(g)     Because of Defendants willful infringement, unfair competition, deceptive trade practices and unjust enrichment, this is an exceptional case under 15 U.S.C. § 1117(a), and Castro Cheese is entitled to exemplary damages under New York law.

55.    This Court:

(a)     Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, successors and assigns, and all others acting in concert or participation with them from using any mark, name, or designation comprised of "Vaquita," "La Vaquita," or that is likely to cause confusion with Castro Cheese's LA VAQUITA Marks;

(b)     Order that, consistent with paragraph (a) above, Defendants remove from sale or display, and recall, any and all products, catalogs, advertisements, and any other items or goods bearing any mark, name, or designation comprised of "Vaquita," "La Vaquita," or that is likely to cause confusion with Castro Cheese's LA VAQUITA Marks. Defendants will also submit to the Court and serve upon

Castro Cheese within 30 days after the entry and service on Defendants of an injunction, a written report detailing: (1) the number of all products produced, manufactured, or made by or for Defendants or under Defendants' control bearing the infringing marks or any word or words confusingly similar thereto; (2) the number of such products removed and/or recalled; (3) the number of such products Defendants received in response to the removal and recall; (4) the amount of such products in inventory; and (5) the physical location of all such products, separately identifying each product in each request (1) – (5) by product designation or product number;

(c)    Order that Defendants deliver to the Court for destruction, or show proof of destruction of, any and all product, labels, signs, prints, advertisements, signage, packages, wrappers, catalogs, Internet web pages, and any other materials in their possession or control bearing or depicting any name or mark confusingly similar to the LA VAQUITA Marks, as well as all molds and other means of making the same as provided by 15 U.S.C. § 1118;

(d)    Order Defendants to file with this Court and to serve upon Castro Cheese, within 30 days after the entry and service of an injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

(e)    Order that Defendants account for, and turn over to Castro Cheese, all money received as a result of their infringement and other unlawful acts, including the amount of the infringing product that was sold in the United States or sold for

shipment outside the United States, and the price for each such product sold, increased as the Court finds just under the circumstances of this case;

(f) Order that Defendants be prohibited from importing any infringing goods into the United States and transporting any infringing goods in commerce for export outside the United States;

(g) Award Castro Cheese damages sustained as a result of Defendants' actions and that the damages be trebled, pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349 (h);

(h) Award Castro Cheese exemplary damages pursuant to New York law;

(i) Award Castro Cheese its reasonable attorney fees pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349 (h);

(j) Award Castro Cheese the costs of this action pursuant to 15 U.S.C. § 1117(a), along with pre- and post-judgment interest; and

(k) Award Castro Cheese such other relief as the Court deems appropriate.

## JURY DEMAND

Castro Cheese demands a jury in accordance with Fed. R. Civ. P. 38.

Respectfully submitted,

Dated: June 28, 2007

By _____
Mark N. Mutterperl (MM 1977)
Jessica S. Parise (JP 6111)
FULBRIGHT & JAWORSKI, LLP
666 Fifth Avenue
New York, New York  10103
Tel.: (212) 318-3000
Fax: (212) 318-3400

<u>Of Counsel:</u>
Christopher R. Benson
Alicia Morris Groos
Chet F. Garner
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701
Tel.: (512) 474-5201
Fax: (512) 536-4598

*Attorneys for Plaintiff Castro Cheese Co., Inc.*